IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ROBERT D. REESE, SR.,

    Plaintiff,  No. CIV S-05-2336 GEB KJM P

    vs.

TOM CAREY, Warden, et al.,  ORDER AND

    Defendants.  FINDINGS AND RECOMMENDATIONS

    /

    Plaintiff is a state prison inmate proceeding pro se with a civil rights action under 42 U.S.C. § 1983. Defendant Kanan has filed a motion to dismiss based on plaintiff's alleged failure to exhaust administrative remedies; defendants Kofoed and Traquina have filed a motion for summary judgment. Plaintiff has filed a motion in limine in anticipation of trial.

I. The Motion To Dismiss (Docket No. 40)

    A. Standard

    The Prison Litigation Reform Act (PLRA) provides that "no action shall be brought with respect to prison conditions under section 1983 of this title, . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Conditions of confinement" subject to exhaustion have been defined broadly as "the effects of actions by government officials on the lives of persons confined in prisons." 18 U.S.C. § 3626(g)(2); Smith

1

v. Zachary, 255 F.3d 446, 449 (7th Cir. 2001); see also Lawrence v. Goord, 304 F.3d 198, 200 (2d Cir. 2002). To satisfy the exhaustion requirement, a grievance must alert prison officials to the claims the plaintiff has included in the complaint. Porter v. Nussle, 534 U.S. 516, 524-25 (2002) (purpose of exhaustion requirement is to give officials "time and opportunity to address complaints internally before allowing the initiation of a federal case"); Brown v. Sikes, 212 F.3d 1205, 1209 (11th Cir. 2000) (1997e(a) requires that a prisoner provide as much relevant information as he reasonably can in the administrative grievance process).

Proper exhaustion of available remedies is mandatory, Booth v. Churner, 532 U.S. 731, 741 (2001), and "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . ." Woodford v. Ngo, 548 U.S. 81, 90 (2006). However, an inmate is required to exhaust those remedies that are available; for a remedy to be "available," there must be the "possibility of some relief. . . ." Booth, 532 U.S. at 738.

California prison regulations provide administrative procedures in the form of one informal and three formal levels of review to address an inmate's claims. See Cal. Code Regs. tit. 15, §§ 3084.1-3084.7. Administrative procedures generally are exhausted once a plaintiff has received a "Director's Level Decision," or third level review, with respect to his issues or claims. Id. § 3084.5. The grievance process must be completed before the inmate files suit; exhaustion during the pendency of the litigation will not save an action from dismissal. McKinney v. Carey, 311 F.3d 1198, 1200 (9th Cir. 2002).

A motion to dismiss for failure to exhaust administrative remedies prior to filing suit arises under Rule 12(b) of the Federal Rules of Civil Procedure. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). In deciding a motion to dismiss for a failure to exhaust non-judicial remedies, the court may look beyond the pleadings and decide disputed issues of fact. Id. at

/////

/////

/////

1119-20.  Defendants bear the burden of proving plaintiff's failure to exhaust.  Id. at 1119.  To bear this burden:

> a defendant must demonstrate that pertinent relief remained available, whether at unexhausted levels of the grievance process or through awaiting the results of the relief already granted as a result of that process.  Relevant evidence in so demonstrating would include statutes, regulations, and other official directives that explain the scope of the administrative review process; documentary or testimonial evidence from prison officials who administer the review process; and information provided to the prisoner concerning the operation of the grievance procedure in this case,. . . .  With regard to the latter category of evidence, information provided the prisoner is pertinent because it informs our determination of whether relief was, as a practical matter, "available."

Brown v. Valoff, 422 F.3d 926, 936-37 (9th Cir. 2005).

### B. Analysis

In his fourth amended complaint, plaintiff alleges that an x-ray taken in December 2005 showed that his fourth metacarpal bone on his right hand, which had previously been broken and treated, was still deformed; that defendant Kanan, the Deputy Director of the Division of Correctional Health Services, approved further consultation about plaintiff's hand, but then failed to follow-up on this approval.  Fourth Amended Complaint (FAC) at 6, 10-11.[1]

Defendant has attached a declaration from N. Grannis, the Chief of the Inmate Appeals Branch (IAB) of the California Department of Corrections and Rehabilitation (CDCR).  Grannis says that inmate appeals accepted for review at the Director's Level are logged into the computer with the Log Number assigned by the prison.  Declaration of N. Grannis (Grannis Decl.) ¶ 5.  She then avers that the IAB accepted only one appeal from plaintiff, Log No. SOL-05-159, before plaintiff filed his original complaint on November 18, 2005.  Id. ¶ 5 & Ex. A.  This appeal from California State Prison-Solano was denied on June 29, 2005, well before

/////

---

[1] For ease of reference, unless otherwise stated, the court refers to the page numbers assigned by its CM/ECF system.

3

1 | defendant Kanan is alleged to have failed in her duty to follow-up on plaintiff's medical care. Id.
2 | ¶ 6 & Ex. B.

Plaintiff argues the issue complained of here was exhausted by Log Number 06-1759, which was submitted on May 17, 2006 and denied at the Director's Level on November 20, 2006. Opp'n at 10-14. This grievance raises many issues and arguably takes the CDCR medical community to task for not following up on plaintiff's continued need for repair of and therapy for his injury. Id. at 12-14. Nevertheless, it cannot serve to exhaust plaintiff's remedies on this issue, for it was filed initially and then completely exhausted only after plaintiff filed his original complaint. McKinney v. Carey, 311 F.3d 1198, 1200 (9th Cir. 2002).

II. The Motion For Summary Judgment (Docket No. 51)

A. Summary Judgment Standards Under Rule 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party
>
> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts

immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson,

477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

On March 17, 2008, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

B. The Eighth Amendment And Medical Care

In Estelle v. Gamble, 429 U.S. 97, 106 (1976), the Supreme Court held that inadequate medical care did not constitute cruel and unusual punishment cognizable under section 1983 unless the mistreatment rose to the level of "deliberate indifference to serious medical needs." Following Estelle, the Ninth Circuit has explained:

> . . . the test for deliberate indifference consists of two parts. First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. This second prong-defendant's response to the need was deliberately indifferent-is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.

Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations & quotations omitted); see also McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992), overruled in part on other

grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997).

There is no Eighth Amendment violation if any delay in treatment is not harmful. Shapley v. Nevada Bd. Of State Prison Com'rs., 766 F.2d 404, 407 (9th Cir. 1985). However, unnecessary continuation of pain may constitute the "harm" necessary to establish an Eighth Amendment violation from delay in providing medical care. McGuckin, 974 F.2d at 1062.

A showing of merely inadvertent or even negligent medical care is not enough to establish a constitutional violation. Estelle, 429 U.S. at 105-06; Frost v. Agnos, 152 F.3d 1124, 1130 (9th Cir.1998). A difference of opinion about the proper course of treatment is not deliberate indifference nor does a dispute between a prisoner and prison officials over the necessity for or extent of medical treatment amount to a constitutional violation. See, e.g., Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

A medical need is serious if failure to treat the condition could cause further significant injury or the unnecessary and wanton infliction of pain. McGuckin, 974 F.2d at 1059.

> The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a "serious" need for medical treatment

Id. at 1060. Broken bones in the hand constitute a serious medical need. Bryan v. Endell, 141 F.3d 1290, 1291 (8th Cir. 1998).

C.  Facts

On July 19, 2004, plaintiff was in a fight at Wasco State Prison and injured the fourth metacarpal in his right hand. FAC[2] at 3; Motion for Summary Judgment (MSJ),

---

[2] Plaintiff has signed the fourth amended complaint under penalty of perjury, so the court relies on it as a declaration for purposes of resolving the motion for summary judgment.

7

1   Declaration of Dr. John Kofoed (Kofoed Decl.), Ex. A at CDCR00282.[3]  On July 21, 2004,

2   plaintiff was sent to an outside hospital for surgical repair of the fracture.  FAC at 3, 9; Kofoed

3   Decl. ¶ 5; id., Exs. A at 283 & B at CDCR00040.  During a follow-up visit with the surgeon on

4   August 10, 2004, the pins were removed and the cast was replaced.  FAC at 9 ¶ 1; Kofoed Decl.

5   ¶ 6 & Ex. B at CDCR00041.  Plaintiff was scheduled for an orthopedic follow-up within four

6   weeks.  Kofoed Decl., Ex. C at CDCR00031.

7            On August 18, 2004, plaintiff was transferred to California State Prison–Solano;

8   during the health intake screening, plaintiff mentioned the need for an orthopedic evaluation.

9   FAC at 9 ¶ 2; Kofoed Decl., Ex. D at CDCR00177.

10           On September 10, 2004, plaintiff asked medical staff to remove the cast.  An x-ray

11  was scheduled for the following Monday.  Kofoed Decl. ¶¶ 9-10; id., Exs. E at CDCR00148 & F.

12           On September 13, 2004, plaintiff's hand was x-rayed through the cast.  The

13  radiologist's report, prepared on September 22, noted a "marked irregularity of the mid portion of

14  the 4th metacarpal," which "appears to represent a fracture with extensive callus formation, but

15  nonunion."  Kofoed Decl. ¶ 12 & Ex. H at CDCR00220; Opposition to Motion (Opp'n), Ex. A.

16           On September 14, 2004, plaintiff's cast was removed in the orthopedic clinic and

17  Defendant Kofoed was asked to provide plaintiff with an orthopedic consultation.  Kofoed Decl.

18  ¶ 11 & Ex. G at CDCR00147.  He observed a "moderate callus" causing a bump, but determined

19  that the bones were aligned.  He ordered physical therapy for plaintiff's hand.  Kofoed Decl. ¶ 11

20  & Ex. G at CDCR00147; Opp'n, Ex. C.  He had no further involvement in plaintiff's treatment

21  and was not responsible for scheduling follow-up care.  Kofoed Decl. ¶ 15.

22           Plaintiff was seen later by Dr. Chen, who reviewed the radiologist's report and

23  gave plaintiff a ducat for a follow-up appointment.  Thereafter, plaintiff was seen by Dr. Noriega,

24  who ordered further x-rays of plaintiff's hand.  Kofoed Decl. ¶¶ 13-14 & Exs. I-J.

25
         [3] All page references beginning with "CDCR" are pages bearing Bates-stamped page
26  numbers included as exhibits in support of defendants' motion.

8

In January 2005, plaintiff was evaluated by Dr. Shifflet at Queen of the Valley Hospital, who noted "malunion, right fourth metacarpal fracture, possible chronic infection." Opp'n, Ex. D at 20. Dr. Shifflet recommended that plaintiff be given pain medication. Moreover, even though he described the malunion as "not that severe," he recommended possible aggressive therapy, and repeat surgery. Id., Ex. D at 20-21.

Plaintiff filed a grievance about the perceived lack of appropriate treatment for the injury to his hand. Many of these were reviewed at the second level by defendant Traquina, who was the Chief Medical Officer at CSP-Solano. MSJ, Decl. of Alvaro Traquina (Traquina Decl.) ¶ 3. Defendant Traquina does not provide care to inmates, but does review some staff responses to inmate grievances concerning medical care. Id.

On April 11, 2005, defendant Traquina issued a second level decision in Log. No. 05-159. He noted that some of plaintiff's complaints had been resolved at the first level, but noted that plaintiff still asked to be referred to a specialist at the University of California, San Francisco (UCSF) and to be given an MRI on his hand. Traquina Decl. ¶ 8 & Ex. A (docket no. 51-4) at 7;[4] Opp'n at 29. Defendant Traquina reviewed the medical care plaintiff had received and noted plaintiff had been put on the waiting list for an MRI and for an appointment with a hand specialist at UCSF. Traquina Decl., Ex. A at 9; Opp'n at 31. According to plaintiff, by this response, defendant Traquina failed to provide adequate medical treatment to plaintiff and failed to follow-up on the treatment already undertaken for plaintiff's injury. FAC at 10, ¶ 11.[5]

/////

/////

---

[4] Although defendants' other exhibits have Bates-stamped numbers, those attached to Dr. Traquina's declaration do not. As before, the court refers to the numbers assigned by the CM/ECF system.

[5] In his motion, defendant Traquina addresses several other grievances plaintiff pursued relating to the treatment for his hand injury. The court does not address them as they were not cited in the complaint as demonstrating Traquina's deliberate indifference to plaintiff's medical care.

Plaintiff eventually was evaluated at UCSF Medical Center. Opp'n, Ex. D at 26. When plaintiff returned to Dr. Shifflet, in December 2005, he complained of continued burning pain in his hand. Although Dr. Shifflet's examination showed some deterioration in the metacarpal head, he did not recommend surgery or other courses of treatment. Id.

D. Analysis

Dr. Kofoed avers that he treated plaintiff on the single occasion shown in the medical records, used his best effort to diagnose and treat plaintiff's injury, and did not disregard any risk of injury or pain to plaintiff. Kofoed Decl. ¶ 18. Plaintiff counters that Dr. Kofoed should not have ordered the cast removed before receiving the results of the x-ray; he also argues that Kofoed could not have conducted an adequate consultation before receiving the results of the x-ray. Opp'n at 5. In his complaint, plaintiff alleges that Kofoed failed to reset the fracture during the September consultation leading to irreparable damages. FAC at 9 ¶ 4.

To the extent plaintiff bases his claim on defendant Kofoed's removing the cast before receiving the results of the x-ray, he has not shown it was this act that caused further damage to his hand or retarded healing. Indeed, the results of the September 13 x-ray suggest the problems with the fracture were present even before the cast was removed. Opp'n, Ex. A.

Dr. Kofoed's ignorance of the results of the x-ray also undercuts plaintiff's claim that the doctor's failure to reset the fracture caused the damage to plaintiff's hand. Plaintiff has presented no evidence suggesting that the problems with the initial repair of the injury would have been apparent without the results of the x-ray. Because nothing suggests Dr. Kofoed was aware of the problems the x-ray disclosed, his failure to reset the injury cannot constitute deliberate indifference to plaintiff's medical need.

Finally, to the extent plaintiff claims Dr. Kofoed's decision to conduct the examination without the results of the x-ray was improper, he still has not demonstrated that a reasonable jury could conclude this act constituted deliberate indifference. While it might have been better practice for Dr. Kofoed to wait to conduct the examination, this is at most a negligent

act, not one that rises to the level of deliberate indifference. See Estelle, 429 U.S. at 106 (negligence or medical malpractice are insufficient to rise to a constitutional violation).

Similarly, plaintiff has failed to show any genuine issue of material fact as to defendant Traquina's liability. Dr. Traquina has submitted his unrebutted declaration that his only role was to review the staff response to medical grievances and that he neither participated in care nor scheduled appointments. Moreover, the thrust of grievance number 05-159, at least by the time it reached the second level, was plaintiff's desire to see a specialist; Dr. Traquina noted that plaintiff was already on the waiting list for an appointment. Traquina Decl. ¶¶ 4, 8. Plaintiff does not suggest or show how a different response could have produced a different result in his medical condition. Given the limited scope of his participation in day-to-day medicine at the institution, Dr. Traquina's response to plaintiff's grievance does not evince deliberate indifference to plaintiff's plight. Hernandez v. Keane, 341 F.3d 137, 144-45 (2d Cir. 2003) (supervisor not deliberately indifferent when he was not involved in care or in scheduling appointments).

III. The Motion In Limine (Docket No. 52)

In light of the recommendation that judgment be entered in defendant's favor, the pending motion in limine is denied without prejudice.

IT IS HEREBY ORDERED that plaintiff's motion in limine (docket no. 52) be denied without prejudice.

IT IS HEREBY RECOMMENDED that:

1. Defendant Kanan's motion to dismiss (docket no. 40) be granted;

2. Defendant Kofoed and Traquina's motion for summary judgment (docket no. 51) be granted; and

3. Judgment be entered consistent with these recommendations.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty

days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 11, 2009.

_____
U.S. MAGISTRATE JUDGE

2/rees2336.57