IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ROBERT D. REESE, SR.,

      Plaintiff,                      No.  2:05-cv-2336 GEB CKD P

    vs.

TOM L. CAREY, et al.,

      Defendants.             FINDINGS AND RECOMMENDATIONS

                                /

        Plaintiff is proceeding pro se with an action for violation of civil rights under 42 U.S.C. § 1983.  The only remaining defendant is defendant Kanan (defendant).  Plaintiff alleges defendant violated plaintiff's Eighth Amendment right to be free from cruel and unusual punishment by failing to provide plaintiff with proper medical care for a broken hand.  This action is proceeding on the fourth amended complaint filed by plaintiff on January 23, 2008.  Defendant's motion for summary judgment is before the court.

I. <u>Summary Judgment Standard</u>

        Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

/////

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

II. Plaintiff's Allegations

In his fourth amended complaint, which is signed under the penalty of perjury, plaintiff alleges on July 19, 2004 he fractured the fourth metacarpal of his right hand while involved in an "altercation" at Wasco State Prison. Plaintiff received treatment for this injury from various medical personnel, but an x-ray taken on December 7, 2005 showed the bone was

still deformed. On that day, defendant, the Deputy Director of the Division of Correctional Health Services, approved further consultation with respect to plaintiff's hand, but then failed to "follow-up" on this approval. Fourth Am. Cmplt. at 10-11.[1] Plaintiff received further treatment with respect to his hand beginning in March 2006. At this point, plaintiff's fourth metacarpal of his right hand is permanently deformed.

III. Eighth Amendment Standard For Providing Inmates Medical Care

      The Eighth Amendment demands that prison officials not act in a manner "sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). An Eighth Amendment claim based on inadequate medical care has two elements, "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992).

      A medical need is "serious" "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" Id. (quoting Estelle, 429 U.S. at 104).

      Deliberate indifference to a medical need is shown when a prison official knows that an inmate has a serious medical need and disregards that need by failing to respond reasonably to it. See Farmer v. Brennan, 511 U.S. 825 (1994). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.

IV. Defendant's Argument And Analysis

      Defendant argues there is no genuine issue of material fact with respect to whether she was deliberately indifferent to a serious medical need of plaintiff's. Defendant provides an

---

[1] Page numbers are those assigned by the court's electronic docketing system.

affidavit and indicates therein that she provided no medical care to plaintiff. After reviewing the evidence submitted by defendant, it appears plaintiff's claim against her arises from a December 7, 2005 letter addressed to plaintiff in which plaintiff's concerns with respect to his injured hand are addressed. The letter is attached to defendant's affidavit as "exhibit A." From the letter itself, it is not clear who signed the letter, but it is clear the letter was signed "for" or, on behalf of, defendant. With respect to the letter, defendant provides the following explanation:

> At the time of the event at issue in this lawsuit, I was Acting Deputy Director/Director of the Health Care Services Division (HCSD) within the California Department of Corrections and Rehabilitation (CDCR) . . . in Sacramento. The HCSD is a statewide arm of the CDCR responsible for health care policy and operations in the prisons.
>
> Outside of the inmate appeals system . . ., inmates or their families sometimes informally wrote to the HCSD directly to complain about health care-related issues in prison. . . In the HCSD, such letters were typically handled by the Litigation, Correspondence and Appeals Unit (LCA Unit).
>
> When inmate letters were received, LCA Unit analysts would contact prison staff for information about the inmate's complaint. LCA Unit analysts relied primarily on the information they received from prison staff, and based on their analysis of that information would draft a response to the inmate's letter. In my position . . . I would typically receive copies of the HCSD response letters sent to inmates, but I had no involvement in the day-to-day operations of the LCA Unit and I never worked directly with any inmate's file. I did not work on [plaintiff's] file.
>
> In my position . . ., I did not examine or treat patients, nor did I directly supervise those who did. I have never treated, met or spoken to [plaintiff.] I had no contact with [plaintiff's] file, other than the receipt in my office of copies of the HCSD correspondence sent to him. . .
>
> I did not learn of any facts that indicated to me that [plaintiff] was receiving inadequate treatment for his medical complaints. I did not learn of any facts that indicated to me that [plaintiff] had any serious medical needs. I was never aware that there existed a substantial risk of serious harm to [plaintiff.] I never approved further consultation about plaintiff's hand.
>
> Also, in the letter itself, there is no recommendation for further medical care

outside of the care which was being provided to plaintiff. At one point, the author of the letter

5

indicates that plaintiff had been referred for a follow up with orthopedic specialist "Dr. Shiffet," and that the referral was "approved." But, nothing suggests the approval of this referral was by defendant or anybody in her office in Sacramento. Rather, it appears the approval of the referral was in the normal course of plaintiff's treatment at his place of incarceration. Nothing suggests defendant or any other person in the Health Care Services Division had any further interaction with plaintiff with respect to his hand injury.

Plaintiff does not dispute any of the evidence described above, with the exception that plaintiff seems to suggest it was the person who signed the December 7, 2005 letter who ordered the follow up visit with Dr. Shiffet.

As indicated above, plaintiff alleges defendant violated plaintiff's Eighth Amendment rights by failing to "follow up" on the referral to Dr. Shiffet, which the court assumes never occurred, or, perhaps, "follow up" with respect to plaintiff's condition in some other respect after defendant's office sent plaintiff the letter dated December 7, 2005. And while there are other problems with plaintiff's remaining claim, the most significant one is nothing indicates defendant was ever aware the visit with Dr. Shiffet did not occur, or of some other reason why plaintiff required further medical assistance, which plaintiff must show to prevail on his claim. The lack of any evidence on this element of plaintiff's claim entitles defendant to summary judgment.

The court notes in plaintiff's opposition to defendant's motion for summary judgment, he also moves for summary judgment. The deadline for filing pretrial motions in this matter was July 2, 2012[2] and plaintiff fails to show any reason why that deadline should be extended. In any case, because there is no genuine issue of material fact with respect to whether defendant was deliberately indifferent to plaintiff's serious medical needs by failing to "follow

---

[2] In the court's March 13, 2012 order, the court indicated the deadline for filing pretrial motions would be July 1, 2012. July 1, 2012 fell on a Sunday, therefore, under Federal Rule of Civil Procedure 6(a), the deadline was extended to the next day.

up" on the condition of plaintiff's right hand after her office sent the letter dated December 7, 2005 to plaintiff, his motion for summary judgment should be denied.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendant Kanan's motion for summary judgment (Dkt. No. 79) be granted;

2. Defendant Kanan be dismissed from this action;

3. Plaintiff's motion for summary judgment be denied; and

4. This case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: November 19, 2012

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

1
rees2336.57